UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ADVANCED SOLUTIONS LIFE
SCIENCES, LLC                                                                                      PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:16-CV-00709-CRS

BIOBOTS, INC.                                                                                    DEFENDANT

**MEMORANDUM OPINION**

I.   Introduction

This matter is before the Court on the motion of Defendant BioBots, Inc. ("BioBots") to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer this action to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §§ 1404 or 1406, ECF No. 9. Plaintiff Advanced Solutions Life Sciences, LLC ("ASLS") responded, ECF No. 10. BioBots replied, ECF No. 15. For the following reasons, the Court will grant in part and deny in part BioBots' motion to dismiss or, in the alternative, transfer. The Court will transfer the case to the United States District Court for the Eastern District of Pennsylvania.

II.  Background

ASLS owns and uses the registered trademark BIOASSEMBLYBOT for three-dimensional (3D) bioprinting and tissue fabrication. Compl. ¶ 1, ECF No. 1. The BIOASSEMBLYBOT mark is registered for "[c]omputer robotics-supported workstations comprising three-dimensional (3D) printers, multi-axis robots, cartridges for containing printing material, dispensers, video cameras and software for visualization of workstation operations,

sensors and software for environmental control of workstation, for fabricating and assembling engineered tissue constructs." *Id.* ¶ 10.

BioBots is a start-up company that designs, develops, and markets a desktop 3D bioprinter under the BIOBOTS mark. Cabrera Decl. ¶ 3–4, ECF No. 9-2. On November 11, 2016, ASLS filed suit against BioBots. Compl. 1, ECF No. 1. ASLS alleges that BioBots is infringing on its BIOASSEMBLYBOT trademark and is competing unfairly against it by selling products deliberately named to infringe on ASLS's trademark and to confuse customers. *Id.* ¶ 2. ASLS also alleges that BioBots is "cybersquatting" by using the domain names www.biobots.com and www.biobots.io because these domain names are confusingly similar to ASLS's BIOASSEMBLYBOT mark. *Id.* ASLS asserts causes of action for: (1) federal trademark infringement under the Lanham Act § 32(1), 15 U.S.C. § 1114(1) (Count I), (2) federal unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) (Count II), (3) violation of the Anticybersquatting Consumer Protection Act (ACPA) under the Lanham Act § 43(d), 15 U.S.C. § 1125(d) (Count III), and (4) Kentucky common law trademark infringement and unfair competition (Count IV). *Id.* at 5–8.

BioBots is a Delaware corporation with a principal place of business in Philadelphia, Pennsylvania. *Id.* ¶ 5. ASLS alleges that this Court has personal jurisdiction over BioBots "because it has committed and is continuing to commit substantial acts of infringement in this judicial district by marketing, promoting, offering for sale, selling, and/or distributing infringing products in this judicial district." *Id.* ¶ 8. ASLS also alleges that "[o]n information and belief, BioBots has offered, promoted, sold, shipped, provided, and/or installed 3D bioprinters using the BIOBOTS Mark to an entity or entities located within the state of Kentucky." *Id.* ¶ 17.

In support of its motion, BioBots submitted the declaration of its Chief Executive Officer, Daniel Cabrera. Cabrera Decl. ¶ 1, ECF No. 9-2. Cabrera states that "BioBots does not conduct business, transact business, or provide services in Kentucky, nor is it licensed or registered to do so in Kentucky." *Id.* ¶ 6. BioBots does not own property or maintain offices in Kentucky. *Id.* ¶¶ 8, 12. BioBots' employees and agents are not residents of Kentucky and BioBots has never sent any employees or agents to Kentucky. *Id.* ¶¶ 9–11. No employees or agents of BioBots have attended trade shows or exhibitions in Kentucky. *Id.* ¶ 11. No Kentucky residents own stock in BioBots. *Id.* ¶ 13. BioBots does not have a registered agent for service of process in Kentucky and has never been involved in a lawsuit in Kentucky before the instant matter. *Id.* ¶¶ 10, 14.

According to Cabrera, "BioBots has completed only one (1) bioprinter sale in any way related to Kentucky. That lone sale amounted to less than 1% of BioBots' bioprinter revenue." *Id.* ¶ 16. The sale occurred because a University of Louisville researcher saw one of BioBots' bioprinters at a conference in Boston, Massachusetts. *Id.* A few days later, the researcher emailed BioBots to schedule a telephone call. *Id.* After the telephone call, the researcher was provided with a price quote and he purchased a BioBots 3D bioprinter. *Id.* BioBots maintains that this is the only 3D bioprinter that it has sold to a Kentucky resident. *Id.*

In addition to this bioprinter sale, BioBots has sold laboratory materials once to a Kentucky resident through its website. *Id.* ¶ 17. Cabrera states that "BioBots' website can be viewed anywhere in the world. The website is interactive to the extent it allows users to contact BioBots or initiate purchases over the Internet." *Id.* Cabrera also states that "nothing about website [sic] or its content is directed toward Kentucky residents as opposed to persons in any other location around the globe." *Id.* These two sales—the sale of the bioprinter to the University

of Louisville researcher and the sale of laboratory materials over BioBots' website—are the only sales BioBots has made to Kentucky residents. *Id.* ¶¶ 16–17.

Cabrera states that "BioBots does not direct its advertising, marketing, or sales efforts toward Kentucky." *Id.* ¶ 7. ASLS disputes this assertion and submits the declaration of Stuart K. Williams, II, Ph.D. Williams Decl., ECF No. 10-1. Dr. Williams states that he is a professor at the University of Louisville, where the sole BioBots 3D bioprinter in Kentucky is located. *Id.* ¶¶ 4–5. He states that in 2016, he received approximately five or six emails from BioBots. *Id.* ¶ 6. He states that most of them appeared to be mass marketing emails regarding BioBots and its products. *Id.* He attaches the most recent email he received, a holiday greeting that he received on December 23, 2016. *Id.* The subject line of the attached email is "Happy Holidays." 12/23/2016 Email, ECF No. 10-1. The email reads:

> Happy Holidays!
>
> Thank you for being a part of our company's journey! It has been an incredible few months for BioBots. Our community of users now extends to nearly 30 countries, and we count hundreds of incredible scientists among our ranks.
>
> None of this would be possible without your help and support, thank you for being on our team. Wishing you and your family a safe, and lovely holiday season.
>
> Warmly,
>
> Your friends at BioBots

*Id.* The bottom of the email has a link allowing the recipient to "unsubscribe from this list." *Id.*

### III. Discussion

#### A. Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where, as here, the

Court decides a Rule 12(b)(2) motion to dismiss without conducting an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The plaintiff, however, must set out the facts supporting jurisdiction with "reasonable particularity." *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted). In ruling on the motion, the Court will view the pleadings and affidavits in the light most favorable to the plaintiff, and it "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id.*

In federal question cases, the Court holds personal jurisdiction over a defendant if (1) the defendant is amenable to service of process under the forum state's long-arm statute and (2) the exercise of personal jurisdiction would not deny the defendant due process under the Constitution. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). BioBots contends that ASLS's proposed exercise of jurisdiction fails both of these requirements. Mem. Supp. Mot. Dismiss 6, ECF No. 9-1.

1. <u>Kentucky's Long-Arm Statute</u>

BioBots contends that it is not amenable to service of process under Kentucky's long-arm statute, Kentucky Revised Statutes § 454.210. *Id.* The long-arm statute must authorize personal jurisdiction over a defendant before service of process may be made. Ky. Rev. Stat. Ann. 454.210(3)(a). The long-arm statute's grant of personal jurisdiction does not extend to the outermost boundaries of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56–57 (Ky. 2011). While the statute's provisions "should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined." *Id.* at

56. A claim premised on contacts, conduct, and activities that do not fit within one of the statute's nine specific categories falls outside of the statute's reach, regardless of whether federal due process would otherwise allow the exercise of personal jurisdiction. *Id.* Moreover, not only must the defendant's conduct fall within one of the nine enumerated categories, the plaintiff's claim must arise from that conduct. *Id.*

ASLS relies on Kentucky Revised Statutes §§ 454.210(2)(a)(1), (2), and (4) to assert personal jurisdiction over BioBots. Resp. Opp. Mot. Dismiss 5, ECF No. 10. BioBots maintains that there is no personal jurisdiction because it undertakes no activities in Kentucky. Mem. Supp. Mot. Dismiss 7, ECF No. 9-1. ASLS asserts first that BioBots has both transacted business in Kentucky under Kentucky Revised Statutes § 454.210(2)(a)(1) and contracted to supply goods in Kentucky under Kentucky Revised Statutes § 454.210(2)(a)(2) because of (1) the emails BioBots sent to Dr. Williams, (2) the sale of the 3D bioprinter to the University of Louisville researcher, and (3) the sale of laboratory materials to a Kentucky resident through the BioBots website. Resp. Opp. Mot. Dismiss 5–8, ECF No. 10.

BioBots' sale of the 3D bioprinter to the University of Louisville researcher constitutes contracting to supply goods in Kentucky under Kentucky Revised Statutes § 454.210(2)(a)(2). "A plain reading of the statutory language produces the interpretation that . . . the contract provide for the supply of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011). In this case, a University of Louisville researcher contacted BioBots via email after seeing a BioBots 3D bioprinter at a conference in Boston, Massachusetts. Cabrera Decl. ¶ 16, ECF No. 9-2. A representative of BioBots and the researcher then spoke over the telephone. *Id.* BioBots offered a price quotation for a 3D bioprinter to the researcher. *Id.* The researcher accepted this offer by purchasing the 3D

6

bioprinter. *Id.* This offer, acceptance, and consideration in the form of an exchange of payment and goods constitute the formation of a contract. The subject of the contract, the 3D bioprinter, is for use in Kentucky at the University of Louisville. *Id.* Thus, subjecting BioBots to adjudication in Kentucky is authorized by the long-arm statute *if* the claim asserted against it arises from this contract to supply goods.

In *Caesars Riverboat Casino*, the Supreme Court of Kentucky rejected the use of a "but for" test in determining if a plaintiff's claim "arises from" the defendant's conduct under the long-arm statute. 336 S.W.3d at 58. In that case, a Kentucky resident slipped on spilled butter at the Indiana casino. *Id.* at 53. She filed suit in a Kentucky state court. *Id.* The Supreme Court of Kentucky found that the casino was transacting business in Kentucky when its conduct consisted of "mass media and billboard advertising in Kentucky, direct mail advertising to Kentucky residents, preferred customer incentives directed to Kentucky residents, and substantial civic and charitable activities" in Kentucky. *Id.* at 58. But the court found that the plaintiff's claim did not arise from that activity because the defendant's wrongful conduct did not originate from or come into being because of its activities in Kentucky. *Id.* at 59. In other words, the court found no "*reasonable and direct* nexus between the conduct that caused [the plaintiff's] injury and [the defendant's] business activities in Kentucky." *Id.* Thus, the court found that it lacked personal jurisdiction. *Id.*

In this case, ASLS's claims arise from BioBots' sale of 3D bioprinters, including the sale to the researcher. ASLS asserts that BioBots markets and sells 3D bioprinters with the BIOBOTS mark, which it argues is confusingly similar to its own BIOASSEMBLYBOT mark. Compl. ¶ 2, ECF No. 1. The 3D bioprinter which BioBots sold to the researcher is one such allegedly trademark-infringing 3D bioprinter. Thus, BioBots' sale of the 3D bioprinter to the researcher in

Kentucky falls under one of the nine enumerated categories in the long-arm statute and ASLS's claims arise from this conduct. Therefore, this sale meets the requirements for long-arm jurisdiction under Kentucky Revised Statutes § 454.210(2)(a)(2). The Court need not address personal jurisdiction under the other provisions of the long-arm statute. The Court will proceed to a determination of whether asserting personal jurisdiction would offend the standards of federal due process.

2. Due Process

Before a state can subject a non-resident defendant to a judgment, federal due process requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Depending on the type of minimum contacts in a case, personal jurisdiction can be either general or specific." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994) (citing *Third Nat'l Bank v. Wedge Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). ASLS relies on specific jurisdiction in this case. Resp. Opp. Mot. Dismiss 10, ECF No. 10. The Sixth Circuit has established a three-part test for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Reynolds*, 23 F.3d at 1116 (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972)).

BioBots argues that it has not purposefully availed itself of the privilege of acting in Kentucky because its online activity and sole bioprinter sale are "insufficient to show the regular

business or continuing relationship with the forum required for purposeful availment." Mem. Supp. Mot. Dismiss 14, ECF No. 9-1 (emphasis omitted). ASLS responds that BioBots purposefully availed itself of the privilege of acting in Kentucky because not only did it purposefully sell a 3D bioprinter to the researcher at University of Louisville, but it also purposefully sold laboratory materials to a Kentucky resident through its website and purposefully sent multiple email solicitations to a Kentucky resident. Resp. Opp. Mot. Dismiss 12, ECF No. 10.

The "purposeful availment" requirement is met "when the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *CompuServe*, 89 F.3d at 1263 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). This requirement insures that "random," "fortuitous," or "attenuated" contacts do not create personal jurisdiction. *Id.* But "even a single act by defendant directed toward [the forum state] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

In this case, BioBots has three connections to Kentucky: (1) BioBots sold a 3D bioprinter to a researcher at the University of Louisville; (2) BioBots sold laboratory materials to a Kentucky resident through its website; and (3) BioBots sent emails to Dr. Williams. The question is whether these acts are sufficient to constitute purposeful availment.

For comparison, in *Neogen*, the Sixth Circuit found that there was specific jurisdiction in a trademark action where the defendant maintained a website and reasonably expected about

fourteen contracts in the forum state every year. 282 F.3d at 890–91. The court found that a defendant's website can constitute purposeful availment "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.* at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The court acknowledged that the maintenance of a website alone does not constitute purposeful availment because a website "by its very nature can be accessed internationally." *Id.* "The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment." *Id.* (citing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 300 (S.D.N.Y. 1996)). But the court did not need to decide whether maintenance of the website alone was sufficient because it found that when potential customers from the forum state contacted the defendant to purchase its services, the defendant welcomed their business on a *regular basis*. *Id.* at 891. The court held that "[a]lthough customers from [the forum state] contacted [the defendant], and not the other way around, [the defendant] could not mail test results to and accept payment from customers with [forum state] addresses without intentionally choosing to conduct business in [the forum state]." *Id.* at 892. This, the court found, established purposeful availment. *Id.*

Conversely, in *Kerry Steel, Inc. v. Paragon Industries, Inc.*, the Sixth Circuit found that the plaintiff had not made a prima facie showing of purposeful availment. 106 F.3d 147, 151 (6th Cir. 1997). In that case, the non-resident defendant received an unsolicited sales call from the resident plaintiff and opted to purchase products from the plaintiff. *Id.* at 152. The defendant negotiated with the plaintiff via fax and telephone to finalize the transaction. *Id.* The court found no purposeful availment, in part because the defendant had no employees or offices in the forum state and no employee of the defendant had ever been to the forum state to conduct business. *Id.*

10

at 151. Also important to the court's analysis, however, was that the plaintiff had been the party to initiate the contact; there was no evidence that the defendant had reached out to the forum state. *Id.* The court was not swayed by the fact that the defendant had entered into a contract with a corporation from the forum state or that it placed telephone calls and sent faxes to the plaintiff in the forum state. *Id.* Finally, the court found it significant that the defendant showed no intention to establish continuing relationships and obligations in the forum state. *Id.* Rather, it appeared that the transaction at issue was an isolated transaction. *Id.* Thus, the Sixth Circuit found that the defendant had not purposefully availed itself of the forum state. *Id.* at 152.

Courts have repeatedly held that as little as a single transaction can establish purposeful availment, particularly in cases involving a non-resident seller and a resident buyer. *See Am. Trade All., Inc. v. S. Cross Trading, Inc.,* No. 2009-CA-001353-MR, 2011 WL 112439, at *2 (Ky. Ct. App. Jan. 14, 2011). *See also First Nat. Bank v. Shore Tire Co., Inc.*, 651 S.W.2d 472, 473 (Ky. Ct. App. 1982) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)). But the crucial distinction appears to be who reached out to whom. *See CAPP Mgmt., LLC v. Alton Coal Dev., LLC*, No. 11-93-HRW, 2013 WL 1314052, at *4 (E.D. Ky. Mar. 26, 2013). *See also Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655, 658 (W.D. Ky. 2007).

This case is distinguishable from the cases in which courts have found specific jurisdiction. BioBots has not welcomed the business of Kentucky residents on a regular basis, as was the case in *Neogen* where the defendant expected about fourteen contracts in the forum state every year. *See* 282 F.3d at 891. Rather, BioBots has only sold products to two Kentucky residents. Cabrera Decl ¶¶ 16–17, ECF No. 9-2. This case is more like *Kerry Steel*, in which the plaintiff initiated the contact, the subject contract was an isolated transaction, and the defendant showed no intention of establishing continuing relationships in the forum state. 106 F.3d at 151.

Here, the customers reached out to BioBots to initiate these sales. Cabrera Decl. ¶¶ 16–17, ECF No. 9-2. The University of Louisville researcher initiated contact with BioBots when he sent it an email a few days after seeing a BioBots 3D bioprinter at a conference in Boston, Massachusetts. *Id.* ¶ 16. The Kentucky resident who purchased laboratory materials did so through BioBots' website, which can be accessed internationally and does not direct its content toward Kentucky residents in particular. *Id.* ¶ 17. "That the buyer's home state was Kentucky is a purely fortuitous consequence, not a purposeful choice" of BioBots. *See Hinners*, 336 S.W.3d at 900. Moreover, each sale was an isolated transaction, rather than a continuing contract for goods or services that would intertwine BioBots with Kentucky. Cabrera Decl. ¶¶ 16–17, ECF No. 9-2.

BioBots' emails to Dr. Williams do not help to establish personal jurisdiction over BioBots either. ASLS asserts as much when it argues that because of the "mass marketing nature" of the emails sent to Dr. Williams, "it is unlikely that Dr. Williams is the only Kentucky resident to have received these solicitations from BioBots." Resp. Opp. Mot. Dismiss 6, ECF No. 10. Because ASLS has attached only one email, the Court will rely only on the language in that email in its analysis. The language of that email indicates that the email was sent only to people who had purchased products from BioBots. For example, "Thank you for being a part of our company's journey" and "None of this would be possible without your help and support, thank you for being on our team" both allude to prior support from the recipient. 12/23/2016 Email, ECF No. 10-1. While it was apparently sent based on a mailing list, given its "unsubscribe from this list" language, *id.*, the list appears to send emails only to those individuals who have already purchased BioBots products. Thus, because there are only two purchasers of BioBots products in Kentucky, this email was likely only sent to the two Kentucky residents discussed above. *See* Cabrera Decl. ¶¶ 16–17, ECF No. 9-2. The email, which does not appear to be a solicitation, but

rather an expression of gratitude, does not rise to the level of advertising that would enable courts in Kentucky to exercise personal jurisdiction over BioBots. Thus, the first prong of the three-part test cannot be satisfied because BioBots did not purposefully avail itself of the privilege of acting in Kentucky.

Because BioBots did not purposefully avail itself of the privilege of acting in Kentucky, exercising jurisdiction over it would violate due process. Thus, the Court need not discuss the other two prongs of the test. Although the extension of jurisdiction is supported by Kentucky Revised Statutes § 454.210(2)(a)(2), federal due process standards do not permit Kentucky to exercise personal jurisdiction over BioBots.

### B. Transfer Under 28 U.S.C. §§ 1404 and 1406

In the event that this Court chooses not to dismiss the case, BioBots alternatively moves for transfer of venue under either 28 U.S.C. §§ 1404(a) or 1406 to the United States District Court for the Eastern District of Pennsylvania. Mem. Supp. Mot. Dismiss 17, ECF No. 9-1. ASLS agrees that, absent personal jurisdiction over BioBots, transfer of the case to the Eastern District of Pennsylvania would be appropriate. Resp. Opp. Mot. Dismiss 14 n.3, ECF No. 10.

A transfer under 28 U.S.C. § 1404(a) may not be granted when the court does not have personal jurisdiction over the defendant. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)). Because the Court lacks personal jurisdiction over BioBots, it will not analyze BioBots' request to transfer venue under 28 U.S.C. § 1404(a).

28 U.S.C. § 1406(a), on the other hand, does not require that the court have personal jurisdiction over the defendant before transferring the case. *Id.* It provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or

if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In the Sixth Circuit, 28 U.S.C. § 1406(a) "provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits," including lack of personal jurisdiction, "in the district court where the action was originally brought." *Martin*, 623 F.2d at 474. 28 U.S.C. § 1631 "also applies to such actions." *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009). 28 U.S.C. § 1631 provides that if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." Both of these similar statutes give the district court broad discretion in ruling on a motion to transfer. *Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009). "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Jackson*, 421 F. App'x at 483 (citing *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003)) (internal quotation marks omitted).

1. <u>Where the Case Could Have Been Brought</u>

The Court must first determine whether the case could have been brought in the Eastern District of Pennsylvania, as the parties contend. The venue statute provides:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

14

28 U.S.C. § 1391(b). BioBots argues that the Eastern District of Pennsylvania is the appropriate forum because, among other things, BioBots' principal place of business and only offices are located in Philadelphia, Pennsylvania. Mem. Supp. Mot. Dismiss 17, ECF No. 9-1. ASLS agrees that, absent personal jurisdiction over BioBots, transfer of the case to the Eastern District of Pennsylvania would be appropriate. Resp. Opp. Mot. Dismiss 14 n.3, ECF No. 10. BioBots, the only defendant, resides in Philadelphia, Pennsylvania. Cabrera Decl. ¶ 2, ECF No. 9-2. Thus, the Court finds that the action could have been brought in the Eastern District of Pennsylvania.

2. Interest of Justice

The Court must also determine whether transferring the case to the Eastern District of Pennsylvania would be in the "interest of justice." *See* 28 U.S.C. §§ 1406(a), 1631. Transfer is appropriate when the plaintiff has "made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Stanifer*, 564 F.3d at 459 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). In other words, "[i]f Plaintiff's mistake were one easy to commit, the penalty of dismissal might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion." *Id.* (citing *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)) (alterations omitted). In this case, ASLS had a colorable argument for personal jurisdiction in the Western District of Kentucky. As discussed above, BioBots' conduct in Kentucky was sufficient to satisfy Kentucky's long-arm statute, but was insufficient to satisfy the due process analysis.

Additionally, BioBots argues that the Eastern District of Pennsylvania is the appropriate forum because (1) BioBots' principal place of business and only offices are located in Philadelphia, Pennsylvania, (2) BioBots' alleged conduct primarily occurred in Philadelphia, and (3) a great portion of the witnesses and evidence central to ASLS's claims and BioBots' defenses

15

are located in Philadelphia. Mem. Supp. Mot. Dismiss 17, ECF No. 9-1. ASLS agrees that, absent personal jurisdiction over BioBots, transfer of the case to the Eastern District of Pennsylvania would be appropriate. Resp. Opp. Mot. Dismiss 14 n.3, ECF No. 10. Thus, the parties agree that transfer is appropriate under these circumstances.

Transfer is also typically in the "interest of justice" because it saves "the parties the time and expense associated with refiling." *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 285 (D.D.C. 2015) (citing *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 78 (D.D.C. 2003)). Therefore, because ASLS's mistake was "one easy to commit," *see Stanifer*, 564 F.3d at 459, the parties agree that transfer is appropriate, and transfer will save "the parties the time and expense associated with refiling," *see Freedman*, 139 F. Supp. 3d at 285, the Court finds that it is in the interest of justice to transfer the case to the Eastern District of Pennsylvania under 28 U.S.C. § 1406(a).

IV. Conclusion

For the reasons stated above, the Court will grant in part and deny in part BioBots' motion to dismiss or, in the alternative, transfer. The Court will transfer the case to the United States District Court for the Eastern District of Pennsylvania. The Court will issue an order in accordance with this memorandum opinion.

May 12, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**


16